# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DE'ANGELO CROSS,<br><br>          Petitioner,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>          Respondent. | Case No. 15-CV-1338-JPS<br>Criminal Case No. 00-CR-36-RTR<br><br><br>**ORDER** |

    On November 9, 2015, Petitioner De'Angelo Cross ("Cross") filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Docket #1). When this matter was reassigned to this branch of the Court in August 2016, the Court determined that it should be stayed pending resolution of several relevant appeals before the Seventh Circuit relating to the effect of *Johnson v. United States*, 135 S. Ct. 2551 (2015), on the petition. (Docket #9). Also at that time, another pertinent case, *Beckles v. United States*, No. 15-8544, was pending in the Supreme Court. (Docket #10 at 1).

    *Beckles* was decided on March 6, 2017. *Beckles v. United States*, 137 S. Ct. 886 (2017). After that decision was issued, the parties sought to lift the stay in this case and brief how the disposition in *Beckles* affects Cross' motion. That briefing completed, the Court now turns to considering the merits of Cross' motion. For the reasons stated below, the Court finds that both *Beckles* and Cross' collateral attack waiver in his plea agreement preclude his claims and, as a result, his motion must be denied.

1. **BACKGROUND**

In the underlying criminal case, Cross was convicted of four counts of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (2), and one count of use of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1). He was sentenced as a career offender under the U.S. Sentencing Guidelines, which elevated his sentencing range from 130–162 months to 188–235 months. The Court imposed a sentence of 220 months of incarceration.

The Guidelines provide that those who qualify as "career offenders" must be given certain offense level and criminal history category increases. U.S.S.G. § 4B1.1(b). A defendant is a career offender if (1) he was at least eighteen years old at the time he committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions for either a crime of violence or a controlled substance offense. *Id.* § 4B1.1(a). At the time Cross was sentenced, the term "crime of violence" as used in the Guidelines was defined as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." *Id.* § 4B1.2(a) (emphasis

added). The italicized portion of this definition is known as the "residual" clause.[1]

At the time of Cross' sentencing in 2000, adherence to the Guidelines was mandatory. The Supreme Court in *United States v. Booker*, 543 U.S. 220, 233 (2005), found that this practice was unconstitutional. Since *Booker*, the Guidelines must be considered in fashioning sentences but can be departed from under appropriate circumstances. *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013).

In 2015, the Supreme Court invalidated the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *Johnson*, 135 S. Ct. at 2560. The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B) (emphasis added). Notably, the emphasized portion of this definition is identical to the analogous clause in the career-offender Guideline, U.S.S.G. § 4B1.2(a)(2), and it is also referred to as the "residual" clause. The *Johnson*

---

[1] Pursuant to Amendment 798 to the Guidelines, effective August 1, 2016, the Sentencing Commission deleted the residual clause contained in U.S.S.G. § 4B1.2(a)'s definition of a "crime of violence" and replaced it with language that simply enumerates specific offenses that can be considered crimes of violence. Amendment 798 was not made retroactive, *see* U.S.S.G. § 1B1.10(d) (listing amendments to be applied retroactively pursuant to 18 U.S.C. § 3582(c)(2)), and it is therefore not applicable to Cross, U.S.S.G. § 1B1.11 ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."); *Belton v. United States*, 71 F. App'x 582, 583 (7th Cir. 2003) (noting that Section 1B1.10 of the Guidelines defines which amendments may be applied retroactively).

Court found that the ACCA's residual clause is unconstitutionally vague, in violation of the Due Process Clause of the Fifth Amendment. *Johnson*, 135 S. Ct. at 2560.

In 2015, Cross filed the instant motion. According to him, because *Johnson* found that the ACCA's residual clause is unconstitutionally vague, the same result should obtain for the identically worded residual clause in the Guidelines. *See United States v. Edwards*, 836 F.3d 831, 835 n.2 (7th Cir. 2016) (observing that cases analyzing "violent felony" under the ACCA and "crime of violence" under the Guidelines are interchangeable). Initially, the government agreed with him, but argued that Cross was not entitled to relief because he had waived his right to appellate relief in his plea agreement and because *Johnson* is not retroactively applicable to the Guidelines. *See* (Docket #6). Counsel then entered on Cross' behalf and argued against the government's positions. *See* (Docket #7).

After Cross' motion was fully briefed, the Court stayed the case pending resolution of several pertinent appeals, as noted above. Most salient here is the decision in *Beckles*, which held that the residual clause found in the career-offender Guideline, unlike the ACCA, is not susceptible to vagueness challenges. *Beckles*, 137 S. Ct. at 897. Key to the Court's analysis was the fact that the ACCA represented a legislative pronouncement fixing the permissible range of sentences for qualifying conduct. *Id.* at 892. By contrast, the post-*Booker*, advisory Guidelines "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." *Id.* Because judicial discretion is part and parcel of the Guidelines, the constitutional concerns that animated the *Johnson* Court—providing notice to defendants of what conduct will subject them to enhanced penalties under the ACCA and

preventing arbitrary application of the ACCA's standards—are not implicated by the Guidelines. *Id.*

In her concurrence, Justice Sotomayor contended that the Guidelines should be open to vagueness challenges because of their centrality in the sentencing process. *Id.* at 900 (Sotomayor, J., concurring in the judgment). More important to this case, however, is her suggestion that "[t]he Court's adherence to the formalistic distinction between mandatory and advisory rules at least leaves open the question whether defendants sentenced to terms of imprisonment before our decision in [*Booker*]—that is, during the period in which the Guidelines did 'fix the permissible range of sentences'—may mount vagueness attacks on their sentences." *Id.* at 903 n.4 (internal citations omitted). Justice Sotomayor expressed no firm view on the merit of any such challenge. *Id.* ("That question is not presented by this case and I, like the majority, take no position on its appropriate resolution.").

## 2. DISCUSSION

### 2.1 The Mandatory Guidelines are Not Susceptible to Vagueness Challenges

It is in that very analytical gap the Court now finds itself. Cross argues that the mandatory Guidelines under which he was sentenced are invalid, based on the mandatory-advisory contrast set up in *Beckles* and the reasoning he borrows from the now-abrogated *United States v. Hurlburt*, 835 F.3d 715, 719–25 (7th Cir. 2016) (en banc), in which the Seventh Circuit held that the advisory Guidelines were void for vagueness. (Docket #12 at 3–4). In Cross' view, the mandatory Guidelines "'were the practical equivalent of a statute,'" and therefore can be subject to vagueness challenges. *Id.* at 5 (quoting *Hawkins v. United States*, 706 F.3d

820, 822 (7th Cir. 2003)). Indeed, as Cross points out, the government argued in *Beckles* itself that the mandatory Guidelines were problematic because they too strongly cabined the sentencing court's discretion. *Id.*

The government responds that since *Beckles* did not decide whether the mandatory Guidelines are open to vagueness challenges, the Court must look to pre-existing authority from the Seventh Circuit. (Docket #13 at 7). Those cases held that neither the advisory nor the mandatory Guidelines were subject to such challenges. *United States v. Tichenor*, 683 F.3d 358 (7th Cir. 2012); *United States v. Brierton*, 165 F.3d 1133 (7th Cir. 1999). Additionally, the government downplays its purported concession in *Beckles* that the mandatory Guidelines are vague, noting that it should not be held to have conceded legal points on which it was simply mistaken. (Docket #13 at 7 n.4); *Krieger v. United States*, 842 F.3d 490, 499 (7th Cir. 2016) (a court is not bound to accept a government concession when the point at issue is a question of law).

The government also believes that by leaving the mandatory-Guidelines question open, the Court did not place the writing on the wall for its eventual downfall. *Id.* at 8–9. Instead, the same reasons that support upholding advisory Guidelines against vagueness challenges apply equally to mandatory ones. *Id.* According to the government, the key feature in *Johnson* was that a statute—great and immovable—fixed the sentences for criminal offenses falling within the ACCA. *Id.* In the government's view, even the mandatory Guidelines did not fix penalties in the way that a statute can, because judges are not legislating minimum and maximum penalties from the bench when they undertake sentencing. *Id.* at 9–10. In other words, whatever a mandatory Guidelines calculation might say about a sentencing range for a particular defendant, it is not the

same thing as the maximum punishment allowed by law, which is provided in the relevant statute. *Id.* at 10. In fact, a judge pre-*Booker* could depart from mandatory Guidelines and impose a higher or lower sentence (still within the range set by statute) in exceptional cases. *Id.*

Cross replies that *Hurlburt* overruled *Tichenor* and *Brierton*, the Seventh Circuit cases on which the government relies. (Docket #15 at 10–11). As a result, although *Beckles* abrogated *Hurlburt*'s ultimate holding with respect to the advisory Guidelines, Cross believes this Court should apply that reasoning to the mandatory Guidelines rather than reject *Hurlburt* wholesale. *Id.* Similarly, Cross points to *Booker* to show that although the mandatory Guidelines technically embraced judicial discretion in limited forms, "departures are not available in every case, and in fact are unavailable in most." *Booker*, 543 U.S. at 234. The sharply curtailed nature of sentencing discretion pre-*Booker*, according to Cross, eviscerates the notion that mandatory Guidelines are analogous to advisory Guidelines in this respect.

The Court commends the parties' focused and well-reasoned presentations of the relevant authorities. Ultimately, however, this case does not turn on whether this Court agrees with Cross' or the government's approach. That issue must be left to the Seventh Circuit to revisit in light of the tumult in the applicable precedents. For this Court's purposes, it is enough to find that because *Hurlburt* has been abrogated on the very issues upon which it abrogated *Tichenor* and *Brierton*, those prior cases have been revived. New life having been breathed into them, *Tichenor* and *Brierton* compel the conclusion that Cross' vagueness challenge is without merit.

In *Brierton*, the Court of Appeals squarely rejected a due-process vagueness challenge to the mandatory Guidelines. *Brierton*, 165 F.3d at 1138–39. The Seventh Circuit observed that the Guidelines are not created to give notice of proscribed conduct to citizens at large but are instead "'directives to judges for their guidance in sentencing convicted criminals.'" *Id.* (quoting *United States v. Wivell*, 893 F.2d 156, 160 (8th Cir. 1990)). Because they constrain only the discretion of the sentencing judge, the court concluded, "the Guidelines are not susceptible to attack under the vagueness doctrine." *Id.*; *accord United States v. Idowu*, 520 F.3d 790, 795–96 (7th Cir. 2009).

In *Tichenor*, the Seventh Circuit extended *Brierton* to fend off a vagueness attack on the post-*Booker*, advisory Guidelines. *Tichenor*, 683 F.3d at 364. Of particular note here, the court in *Tichenor* was not swayed by the defendant's attempt to analogize the Guidelines to statutes, holding that although the Guidelines influence the sentencing court, "[t]he sentencing judge's authority to exercise discretion distinguishes the Guidelines from criminal statutes in a significant and undeniable manner." *Id.* at 365. Moreover, the Court of Appeals, reviewing in *Tichenor* the career-offender Guideline, found that "*Brierton* and *Idowu* did not rest on the specific provisions at issue," so the fact that they assessed other Guidelines provisions was of no moment. *Id.* at 366. In the court's view, there was nothing in the career offender guideline that was "'more problematic' than the guidelines challenged in our prior cases." *Id.*

Then came *Hurlburt*, in which the Seventh Circuit held that *Tichenor* must be overruled. *Hurlburt*, 835 F.3d at 725. The court noted that *Tichenor* rested on two interrelated premises, both of which had been undermined by intervening Supreme Court decisions. *Id.* at 722. First, *Johnson*

eviscerated *Tichenor*'s premise that the vagueness doctrine cannot apply to the Guidelines because they only provide directives to judges in sentencing rather than defining illegal conduct. *Id.* Second, in *Peugh*, 133 S. Ct. at 2077–78, the Court held that the advisory Guidelines are subject to the limitations imposed by the Ex Post Facto Clause. Thus, in *Peugh*, the district court had to apply the Guidelines in effect when the defendant committed his crime, not the harsher Guidelines in effect when he was sentenced. *Id.* In *Hurlburt*, the Seventh Circuit found that *Peugh* undermined *Tichenor*'s conclusion that the vagueness doctrine does not affect the Guidelines because they are merely advisory. *Hurlburt*, 835 F.3d at 724.

Cross' suggestion that *Hurlburt*'s overruling of *Tichenor* survived *Beckles* certainly carries some persuasive force. As to *Tichenor*'s first premise, *Beckles* appears to have affirmed the view expressed in *Johnson* that both laws that define criminal offenses and those that fix permissible sentences can be void for vagueness. *Beckles*, 137 S. Ct. at 892. Assuming this is true, *Beckles* affirms the Seventh Circuit's view in *Hurlburt* on this point.

*Tichenor*'s second premise—that the Guidelines are not statute-like enough to be attacked as vague—is likewise debatable. *Booker* had harsh words for the mandatory Guidelines, saying that "we have consistently held that the Guidelines have the force and effect of laws." *Booker*, 543 U.S. at 234. The Court explained that

> [a]t first glance, one might believe that the ability of a district judge to depart from the Guidelines means that she is bound only by the statutory maximum. Were this the case, there would be no *Apprendi* problem. Importantly, however, departures are not available in every case, and in fact are

> unavailable in most. In most cases, as a matter of law, the Commission will have adequately taken all relevant factors into account, and no departure will be legally permissible. In those instances, the judge is bound to impose a sentence within the Guidelines range.

*Id.* This view was echoed in *Peugh*, where the majority opined that even post-*Booker*, the Guidelines anchor the federal sentencing scheme and "remain a meaningful benchmark through the process of appellate review." *Peugh*, 133 S. Ct. at 2083. Indeed, even the advisory Guidelines require a justification for the sentencing court's departure therefrom. *Id.*; *see also Hawkins*, 706 F.3d at 822 (departures from mandatory Guidelines "were permitted on specified grounds, but in that respect the guidelines were no different from statutes, which often specify exceptions").

But *Beckles* seemed to walk back this view and return to the fundamental notion expressed in *Brierton* and *Tichenor* that merely cabining a sentencing judge's discretion does not give rise to vagueness concerns. The Court relied heavily on the notion that the advisory Guidelines "merely guide the district court's discretion," and a "system of guided discretion" is not amenable to a vagueness challenge. *Beckles*, 137 S. Ct. at 894. Further, the Court distinguished *Peugh*, stating that while the unique features of the Guidelines rendered them immune from vagueness scrutiny, cases like *Peugh* provide that other constitutional challenges are permissible because those inquiries are "'analytically distinct.'" *Id.* at 895 (quoting *Peugh*, 133 S. Ct. at 2088). Thus, this premise of *Tichenor* and *Brierton* appears to have survived—and even been reinforced by—*Beckles*.

Against this backdrop, the Court is obliged to conclude that it is bound not by *Hurlburt* but by the intervening authority of *Beckles*. If the Seventh Circuit can tread a middle way through the analytical minefield

left in the wake of these cases, it is welcome to do so. This Court cannot undertake that task, since it is first and foremost bound to follow the law given to it by higher courts. Because the Court cannot conclude with certainty that *Hurlburt*'s abrogation of *Tichenor* remains notwithstanding *Beckles*, the Court is constrained to follow *Beckles*, *Tichenor*, and *Brierton*, which point ineluctably to the conclusion that even mandatory Guidelines are not amenable to vagueness challenge. *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987) (in order to depart from appellate precedent, the district court must be "powerfully convinced" that the higher court would overrule its previous decision "at the first available opportunity"); *Olson v. Paine, Weber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir. 1986) (lower courts shall not go against binding precedent unless a subsequent decision makes it "almost certain" that the higher court would reverse its previous position "if given a chance to do so"); *see also Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.").[1]

---

[1] The Court notes that several district courts around the country have already issued decisions on this issue, though none within this Circuit. For instance, in *United States v. Tunstall*, Case No. 3:00-cr-050, 2017 WL 1881458, at *6 (S.D. Ohio May 9, 2017), the district court found that the mandatory Guidelines are sufficiently statute-like to implicate the due-process vagueness concerns not applicable to the advisory Guidelines. By contrast, in *Cottman v. United States*, Case No. 8:16–cv–1575–T–24TBM, 2017 WL 1683661, at *2 (M.D. Fla. May 3, 2017), the court found that, much like this case, existing Eleventh Circuit precedent dictated that the mandatory and advisory Guidelines are equally insulted from vagueness attacks. *See also In re Griffin*, 823 F.3d 1350, 1354 (11th Cir. 2016); *United States v. Matchett*, 802 F.3d 1185, 1193–96 (11th Cir. 2015).

## 2.2 Cross Waived His Right to Collaterally Attack His Sentence

The Court's conclusion on the merits of Cross' challenge is sufficient to dispose of his motion. However, the Court will close with a brief analysis of an independent ground for denying the motion: Cross' plea-agreement waiver of his right to bring collateral attacks. His plea agreement contains the following provision:

> Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, and (3) ineffective assistance of counsel.

(Docket #7-1 ¶ 29A). Waivers like this one are generally enforceable with limited exceptions. *Solano v. United States*, 812 F.3d 573, 577 (7th Cir. 2016); *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011). The exceptions courts recognize largely track those listed in Cross' appeal waiver. They include: (1) an involuntary plea; (2) a sentence in excess of the statutory maximum; (3) the sentencing court's reliance on any constitutionally impermissible factor; and (4) ineffective assistance of counsel. *Solano*, 812 F.3d at 577; *Jones v. United States*, 167 F.3d 1142, 1144–45 (7th Cir. 1999).

None of these exceptions apply here. First, Cross does not argue that he received ineffective assistance of counsel, nor was his sentence greater than that authorized by the applicable statutes (or indeed, the applicable Guidelines). Second, Cross is mistaken to contend that the

career-offender provision of the pre-*Booker*, mandatory Guidelines represents a "constitutionally impermissible factor" applied during his sentencing. (Docket #7 at 8). Even assuming Cross is right that the career-offender provision of the mandatory Guidelines is unconstitutional, this exception does not cover that kind of sentencing "factor." Instead, it is limited to immutable factors such as the defendant's race or gender. *See Solano*, 812 F.3d at 577; *United States v. Trujillo-Castillon*, 692 F.3d 575, 579 (7th Cir. 2012) (holding that a court may not consider characteristics such as a defendant's "race, sex, national origin, creed, religion, and socio-economic status").

The Seventh Circuit has declined to extend this exception to cover application of impermissible or unconstitutional Guidelines provisions. *See United States v. Feichtinger*, 105 F.3d 1188, 1190 (7th Cir. 1997) (A "waiver of a right to appeal is subject to exceptions," but "an improper application of the guidelines" is not one of them); *United States v. Kratz*, 179 F.3d 1039, 1041 (7th Cir. 1999) ("[I]f the district court considers an impermissible factor (such as race) or the sentence exceeds the statutory maximum, appellate rights can survive a waiver. However, a mistake by the trial court in the application of the Sentencing Guidelines will not of itself resurrect the right to appeal.") (internal citations omitted); *United States v. Lockwood*, 416 F.3d 604, 608 (7th Cir. 2005) (refusing to recognize *Booker* as supporting a claim that the defendant's sentence was imposed in excess of the statutory maximum); *United States v. Garcia*, Case No. 3:13-CR-52 JD, 2016 WL 3999997, at *5 (N.D. Ind. July 25, 2016) ("[T]he Seventh Circuit has held that even Guidelines challenges of constitutional origin [are] barred by waivers."). Despite Cross' clever suggestion that *his* plea agreement's use of the phrase "constitutionally impermissible factor" is

somehow broader—as a matter of contract interpretation—than the scope of that phrase as used for decades in Circuit authority, *see* (Docket #7 at 9–10), the Court will not extend this well-settled exception beyond the bounds the Court of Appeals has set. This is especially appropriate in the absence of evidence that Cross' and the government's mutual understanding at the time of the plea reflected this novel interpretation, which would have been inconsistent with existing Seventh Circuit precedent. As a result, this exception affords Cross no relief.

Finally, Cross' waiver was not involuntary, despite the fact of the judge's failure to discuss it during his plea colloquy. It is worth noting at the outset that he did not challenge the voluntariness of his plea—including the collateral-review waiver—on appeal, as is generally required to preserve the argument for collateral attack. *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008). But even forgiving the procedural default for the sake of argument, Cross' arguments about a purported Rule 11 violation during his plea colloquy do not entitle him to relief.

Cross is correct that the magistrate did not expressly question him about the appellate and collateral attack waiver in his plea agreement during the Rule 11(b) colloquy in his case. *See* (Docket #7-2) (transcript of change-of-plea hearing); *see also* Fed. R. Crim. P. 11(b)(1)(N). He is also correct in noting that the Seventh Circuit has held that an appellate waiver in a plea agreement, if not separately discussed at the Rule 11(b) colloquy, might not be enforceable on direct appeal. *United States v. Smith*, 618 F.3d 657, 664–65 (7th Cir. 2010). However, in one of Cross' principal cited cases, *United States v. Sura*, 511 F.3d 654, 659–60 (7th Cir. 2007), the Court of Appeals distinguished the sorts of Rule 11 violations that count in a direct appeal versus a collateral attack. Specifically, the court concluded that a

"technical[l] violation" of the Rule was insufficient to undermine the enforceability of a waiver when that challenge was made in a collateral attack. *Id.* at 660 (citing *United States v. Timmreck*, 441 U.S. 780, 785 (1979)). This is particularly true where the habeas petitioner does not demonstrate prejudice from the failure to mention the waiver during the colloquy—for instance, by arguing that he was actually unaware of the waiver's existence or that he would not have pled guilty had he understood the waiver. *Id.*; *cf. Smith*, 618 F.3d at 665 ("Not every deviation from Rule 11(b)'s requirements renders an appellate waiver unenforceable.").

Here, Cross fails to appreciate the more difficult road he faces as a habeas petitioner challenging the voluntariness of his waiver on Rule 11 defects. Whatever may have sufficed to overcome his direct appeal waiver during his direct appeal (had he taken one), he has not made the required showing necessary to overcome his collateral attack waiver. *See Timmreck*, 441 U.S. at 784 (a claim for a technical violation of Rule 11 "could have been raised on direct appeal," but "there is no basis here for allowing collateral attack to do service for an appeal") (internal citations and quotations omitted); *Lewis v. United States*, Civil No. 10–580–GPM, 2011 WL 2420375, at *5 (S.D. Ill. June 11, 2011). First, as *Sura* and *Timmreck* make clear, a mere failure to mention a specific plea term like a waiver at the change-of-plea colloquy is technical in nature. Further, Cross makes no suggestion that he was actually prejudiced by the waiver; he does not claim to have been unaware of the waiver or that it would have changed

his plea decision had he known of it.[2] In fact, Cross seems to want to invalidate the waiver but *not* his plea, thereby arguing himself out of the very exception he wants to apply here.[3]

Finally, the Court notes that notwithstanding Cross' belief that he has gotten a raw deal from the government—including baldly claiming that the government made no "concessions" as it had promised to do in the plea agreement, *see* (Docket #7 at 7)—this is not remediable on collateral review. The Seventh Circuit has explained that a defendant can protect himself against sentencing errors, such as those occasioned by the Guidelines, by entering a plea pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). *Kratz*, 179 F.3d 1039. "Otherwise," instructs the Court of Appeals, "we will hold a defendant to his bargain—the good as well as the bad—unless he can show that his case was marred by one of the fundamental errors that we have said might resurrect the appeal right." *Id.* No such fundamental error occurred in this case, and thus Cross cannot escape his collateral review waiver. *See id.* at 1043 ("[T]he district court's error, if there was one, implicated the Guidelines, not the

---

[2]Neither does he contend that his counsel was ineffective in negotiating the plea, including the waiver provision, or that he was coerced into entering the plea—circumstances recognized in *Jones*, 167 F.3d at 1145, as warranting exception to a collateral attack waiver. *See also Hurlow v. United States*, 726 F.3d 958, 965 (7th Cir 2013).

[3]As explained above, Cross' challenge is narrow, focusing only the court's failure to apprise him of his collateral attack waiver during the plea colloquy. Because Cross expresses no desire to overturn the plea in its entirety, and because he offers no argument in favor of such a finding, the Court sees no reason to undertake the totality-of-the-circumstances analysis normally required to discern whether a plea was knowing and voluntary. *See Sura*, 511 F.3d at 659; *United States v. Coleman*, 806 F.3d 941, 944–45 (7th Cir. 2015).

Constitution," and any such error "is not enough to validate [the] waiver."); *United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005) (broadly-worded appeal waivers "are effective even if the law changes in favor of the defendant after sentencing"). Put simply, even a good constitutional argument—as his *Beckles* argument may turn out to be—can be waived. *See United States v. Behrman*, 235 F.3d 1049, 1052 (7th Cir. 2000) (rejecting the argument that any constitutional argument must always be considered an exception to a collateral-attack waiver).[4]

## 3. CONCLUSION

The Court is bound to follow controlling Supreme Court and Seventh Circuit precedent in this case, and that authority dictates that vagueness challenges may not be raised against the pre-*Booker*, mandatory Guidelines. Furthermore, with respect to Cross' own case, a valid collateral attack waiver forecloses any such challenge, even were it meritorious. As a result, the Court must deny Cross' motion.

However, because at least the *Beckles* question is close enough to be the subject of vigorous debate, the Court will grant Cross a certificate of

---

[4]The Court declines to reach the parties' final area of disagreement concerning whether *Johnson*'s holding regarding the ACCA can be retroactively applied to the Guidelines. *See* (Docket #6 at 6–25); (Docket #7 at 11–23). Two independent grounds for disposition are enough. That said, the Court observes that several recent decisions from other district courts have concluded that extending *Johnson* to the mandatory Guidelines would constitute a new rule that must first be recognized in the Supreme Court. *See United States v. Russo*, 8:03CR413, 2017 WL 1533380, at *2–4 (D. Neb. Apr. 27, 2017); *Hodges v. United States*, CASE NO. C16-1521JLR, 2017 WL 1652967, at *2 (W.D. Wash. May 2, 2017); *see also Griffin*, 823 F.3d at 1355 (observing that *Johnson*'s holding with respect to the ACCA could not be automatically retroactively applied to cases involving Guidelines challenges). Whether this Court would also reach that conclusion under the applicable Seventh Circuit precedent is better left for a more appropriate case.

appealability in this case. *See* Rule 11(a) of the Rules Governing Section 2255 Cases; *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (to obtain a certificate of appealability, the movant must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further").

Accordingly,

**IT IS ORDERED** that Petitioner's motion for leave to file an overlong brief (Docket #16) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**; and

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **GRANTED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of May, 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge